23 C.C.P.A. (Patents)

## In re REICHEL.

### Patent Appeal No. 3634.

Court of Customs and Patent Appeals.
June 17, 1936.

McConkey & Smith, of Washington, D. C. (Stephen Cerstvik, of East Orange, N. J., and N. D. Parker, Jr., of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming the decision of the Examiner rejecting all of the claims of appellant's application, four in number, for want of patentability in view of the prior art.

Claim 1 is illustrative of the claims on appeal, and reads as follows: "1. An expansible diaphragm device comprising means providing a chamber and including a supporting shell, a diaphragm closing said chamber and movable in response to a difference in pressure at opposite sides of the diaphragm, said diaphragm having a peripheral flange portion inclined at an angle toward the normally preponderating pressure side of said diaphragm, and an annular connection between said flange portion and the shell, said connection comprising sealing material within the annular space defined by the peripheral edge of the shell and the inclined flange portion of the diaphragm so that the sealing material is not susceptible to tension due to movements of the diaphragm occasioned by pressure preponderance changes of the device as long as the normal relation or direction of preponderance is maintained."

The references relied upon are: Dillon, 995,444, June 20, 1911; Loepsinger, 1,178,-528, April 11, 1916; Jaubert (Br.), 191,796, January 12, 1923; Jensen, 1,677,100, July 10, 1928; Cunningham (Br.), 306,660, February 28, 1929; Wertz, 1,719,153, July 2, 1929.

The application relates to diaphragm devices for use in such instruments as altimeters. The drawings disclose such a diaphragm device consisting of a cylindrical shell, the edges of which are inclined inwardly at an angle of approximately 45 degrees. The device is completed by two corrugated diaphragm disks, said disks likewise having their peripheral edges inclined at such an angle as to fit against the inclined edges of the shell. One of such disks is positioned on each side of the shell, said disks being so placed that their inclined peripheral edge portions are *inside* the bead portions of the shell and have their inclined edges abutting against the inner side of their respective bead portions of the shell. The structure is completed by sealing the joints between the peripheral edges of the disks and their respective bead portions of the shell by the application of solder to said joints.

The specification of appellant's application discusses the difficulties allegedly theretofore encountered in furnishing a joint between the peripheral edge of the diaphragm disk and the shell which would permit flexing of the diaphragm and at the same time prevent the pulling away of the joint, said straining of the joint resulting in leakage and failure of the device. The claimed improvement here is that, with the joint shown by appellant, the building up of pressure within the device, rather than straining said joint, actually causes the abutting surfaces of the shell and the diaphragm disk to be more firmly held against each other, thus eliminating the trouble which had formerly been encountered.

The basic reference is the patent to Dillon. This discloses a gasoline engine in which each so-called cylinder is made up of a pair of disks. These disks have circular

portions cut out of their centers. The two disks comprising a cylinder are united at their peripheral edges by means of an annular ring. This ring is formed with side walls projecting inwardly, and each disk is fastened to said annular ring by being attached to the *inner* surface of its respective side wall, sealing being accomplished by brazing or welding the joint throughout its periphery. The result of such a joint is that, when pressure is built up between said pair of disks, the abutting surfaces of the disks and their respective side walls on the annular ring are pressed together, overcoming the tendency to pull the joint apart that would exist if the peripheral edges of the disks were attached to the outside edges of said side walls. The inner edge of each disk is attached to the flange of a channel-shaped ring; this ring can best be described as a hub having a channel-shaped groove on its periphery. The center of the channel ring is hollow. The disks forming any cylinder are attached to the flanges of adjacent channel rings, so that a cylinder is made up of said disks, the annular sealing ring at their peripheries, and the space between said adjacent channel rings. The channel rings are not otherwise mechanically connected than by means of the joint between each channel ring and its respective disks. Communication between the various cylinders exists through the hollow portions of said channel rings. The resultant structure is a series of so-called cylinders in much the same form as a bellows, and the explosion of fuel therewithin results in a lengthening of this bellows structure, which motion along the axis of the structure is designed to be utilized by such well-known means as a crank shaft. The structure is completed by the provision of end plates and intake and exhaust valves, together with a source of ignition.

Reference has been made in some detail to the peripheral joint shown by Dillon, the only practical difference between said joint and the joint of appellant being that the angle formed by the flanges on the annular ring is a right angle, whereas appellant's shell flanges are shown as having angles of approximately 45 degrees, and the further fact that Dillon seals his joint by brazing, welding, etc., whereas appellant contemplates the application of solder for this purpose. However, it is necessary to note that the joints by which the inner edges of the disks in Dillon are fastened to their respective channel ring flanges are opposite in character; that is, the flange on the channel ring abuts the pressure side of said disk, so that strain resulting from pressure within the cylinder would be in a direction tending to separate the disk from the flange, rather than to hold the abutting surfaces more tightly together.

The patent to Loepsinger relates to a pressure regulating valve designed for use in connection with an automatic sprinkler system for fire prevention; the purpose of the valve is to hold the pressure on the sprinkler system to safe limits regardless of increases in pressure in the supply system. As a part of the valve mechanism there is disclosed an expansible structure consisting of sections, each section made up of two disks, which disks are attached to hub members at their inner periphery. The outer peripheries of each pair of disks are joined by attaching the same to a ring. Inasmuch as the joint so disclosed by Loepsinger is obviously not as pertinent as that disclosed by Dillon, it is unnecessary to describe the Loepsinger structure in greater detail.

The patent to Jensen relates to metallic containers for liquids, fuel oils and the like. These containers are in the form of barrels, drums, or tanks. The cylindrical portion of the structure shown is referred to as the body portion, and the circular end members are described as heads. The drawings show a beaded edge on the body at each end, said beaded ends overlapping complementary beaded edges on the heads. The patent states: " * * * If fluid tightness is desired or required, the overlapping beads 2 of the body portion 1 may be permanently joined to the beads 5 of the heads 4 by edge welding as indicated conventionally at 6 in Fig. II."

The joint formed by the beaded edges above referred to is such that pressure within the drum would tend to hold the contacting beads of the body and head portions in toward each other.

The patent to Wertz is of the same order as that to Jensen; the heads of the Wertz metallic container, having inwardly turned flanges, are inserted into the cylindrical or body portion, where they seat against a bead; the edges of said body portion are then swedged over to embrace said head flanges, the joint being then welded.

The British patent to Jaubert relates to metallic containers for fluids under pressure, such as hydrogen, oxygen, acetylene, etc. It shows a cylindrical body portion into which end portions are inserted; fol-

lowing the insertion of the end portions, the body portion is given internally projecting beads, against which the base or end portions seat; the joints between these beads and the end portions are soldered.

The British patent to Cunningham likewise relates to metallic containers for fluids under pressure. The end of the cylindrical or body portion is turned inward to bear against the periphery of the end section; this section is more or less saucer-shaped and its peripheral edge bears against the inner surface of the inwardly turned portion of the cylinder. The joint is completed by welding.

As hereinbefore stated, the basic reference is the patent to Dillon. This patent alone was not relied upon by the Patent Office tribunals as an anticipation of appellant's invention, but said tribunals found lack of patentability of appellant's claims upon Dillon in view of the patents to Jaubert, Jensen, Cunningham, and Wertz.

The Board of Appeals in its decision stated: "Referring to the Dillon patent, it is obvious that it shows the ring 15 having flanges which serve the exact function which the flanges in applicant's device serve. Hence, here is a teaching in the same art of the use of flanges to counteract the pressure on the diaphragm. It is true that at the center the flanges shown do not serve this function. If it is found that the seal will break at this point instead of at the periphery, it would seem to be obvious to any mechanic to arrange the flanges at the center on the outside of the diaphragms the same as at the periphery. The basic patent used against the claims is, therefore, very close and any secondary references might not be needed to make the modifications noted. The references showing containers all teach the use of flanges to abut the end walls. We believe that they are not too remote to teach any one working in the diaphragm art to employ flanges for the same purpose. In each case it is a question of overcoming the breaking of the seal at the joint. Any metal worker would obviously derive teaching from the prior constructions of metal containers to aid him in constructing a metal diaphragm structure."

A motion for reconsideration of said decision was made by appellant, in which motion, among other things, it was urged that Dillon alone did not anticipate appellant's invention. In its decision denying such motion the board stated: *"We did not rely exclusively on the Dillon patent, but also referred to the secondary references.* In these secondary references there is an appreciation expressed of the advantage the flanges on the cylindrical wall serve to prevent outward movement of the end wall. Here, we have a clear teaching of the value of the flanges. A skilled metal worker would immediately see the value of similar flanges, if used in a similar relation on other metal structures. We believe that they are sufficient to teach any metal worker to employ flanges on the inner rings in Dillon to abut the outer sides' of the diaphragms so that this part of the structure will be as strong as the connection at the outer periphery of the diaphragm. We have carefully noted the decisions referred to. In the present case there appears to be sufficient teaching in the secondary references to modify the Dillon patent so as to meet the claims without involving invention." (Italics ours.)

From the foregoing, it is clear that the board did not consider the Dillon patent alone as anticipating appellant's invention.

It is plain that, if such secondary references may be resorted to, appellant's claims lack patentability; but if such secondary references relate to an art too remote to teach any one working in the diaphragm art the use of the flanges there shown in the Dillon structure, then the claims should have been allowed.

We are of the opinion that it would not be obvious to one skilled in the diaphragm art to employ the flanges shown in the secondary references, all of which references relate to flanges for fluid containers usually in the form of barrels, drums or tanks. True, some of such references relate to containers for fluids under pressure, but all of the containers shown in the references are rigid and unyielding. The walls of the containers shown in the secondary references, if they expand and contract at all, do so to a very minor and theoretical degree; certainly they do not do so to the same extent, relatively, as does a diaphragm such as shown by appellant and by Dillon, and the structures of the secondary references are designed to avoid such expansion and contraction as far as possible, rather than to permit it.

In appellant's device, the diaphragms are permitted to move outwardly, and the flanges are employed for the prevention of the disruption or breaking of the sealed connections when the diaphragms are so moved.

In the case of In re Bennett, 65 F.(2d) 144, 145, 20 C.C.P.A.(Patents) 1087, the appellant there claimed a sheet steel barrel construction formed of heavy gauge sheet metal. The Patent Office tribunals relied upon a basic reference showing a barrel head of the type disclosed by Bennett, but not having the particular form of closure claimed by him. A secondary reference was relied upon by the Patent Office tribunals showing a closure for cans, the closure of which was so similar to that employed by Bennett that, if such secondary reference could be properly resorted to, the claims of Bennett lacked patentability. We reversed the decision of the Board of Appeals in that case and held that the claims were patentable. In our opinion we stated: "After careful consideration of the matter, we are inclined to the belief that the claims of the appellant should have been allowed. There is great doubt whether the fact that a similar method of closure which might have been applied to tin cans and paint buckets, would suggest to the mind of one skilled in the art of manufacturing steel barrels that the same principal might be applied to the manufacture of such barrels. We are clearly of opinion that such worker in the art, on an inspection of the Schroeder barrel, would not, because of his observation of the same, be led without experimentation to a conception of the closure disclosed by the appellant in this case."

We think there is a close analogy in the case last cited to the case at bar.

On the other hand, the solicitor for the Patent Office calls attention to our decision in the case of In re Raleigh, 62 F.(2d) 200, 202, 20 C.C.P.A.(Patents) 751, which case involved a joint in a member which had flexible metal members to move under the influence of pressure. There, as here, there was a basic patent and a secondary reference. The secondary reference had a very broad claim which embraced "The method of seaming sheet metal hollow articles." In our opinion we said:

"It is argued, first, by appellant, that Sonneborn's patent is not in an analogous art. We are not able to agree with this contention. Both the appellant and Sonneborn are engaged in the art of making fluid-tight seams in metal of the same general character. As stated in In re Schneider, 47 F.(2d) 970, 971, 18 C.C.P.A.(Patents) 1114, the test is:

" ' * * * Is the patentable conception in Reich in an art so remote and nonanalo-gous to the concept in applicant's art as to require invention to make the necessary substitution?'

" 'It is our opinion that no invention is involved in utilizing Schneider's seam and method in constructing appellant's thermostatic cell."

We cannot agree with the solicitor for the Patent Office that the case last cited is as nearly in point as the case of In re Bennett, supra.

It is our opinion that the Board of Appeals erred in holding that the secondary references were available to supplement the Dillon reference, and for that reason its decision is reversed.

Reversed.