24 C.C.P.A.(Patents)

## In re KYLSTRA.
## Patent Appeal No. 3750.

Court of Customs and Patent Appeals.
Feb. 8, 1937.

Charles L. Reynolds, of Seattle, Wash., Stephen Cerstvik, of East Orange, N. J., and N. D. Parker, Jr., of Washington, D. C., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

The application for patent here at issue, filed in the United States Patent Office April 11, 1932, is entitled "For Improvement in Ammunition Counters."

At its outset, the specification recites that the alleged invention relates to military equipment, "specifically to machine guns such as are mounted upon airplanes," but the claims themselves are not so specifically limited. Patentability was denied by the examiner in view of prior art cited and the Board of Appeals affirmed his decision. The instant appeal to this court followed.

There are four claims, numbered, respectively, 9, 10, 11, and 12, of which 9 is quoted as fairly illustrative: "9. In combination with a machine gun an ammunition container for feeding shells to the gun, a counter distant from the machine gun and ammunition container, means disposed for actuation by shells passing to the gun to advance the counter, means the movement of which is simultaneous with and essential to the firing of the gun, and means controlling actuation of the latter means and associated with the counter-advancing means to operate the latter only when the controlled means is operating, and the gun is firing."

During the prosecution of the application many references were cited, but those finally relied upon were the following patents:

Lettelier et al., 296,194, April 1, 1884.

Cravath, 641,275, January 16, 1900.

Fluegelman, 858,378, July 2, 1907.

Tanner, 878,835, February 11, 1908.

Cuppers (German), 299,128, July 27, 1920.

Sundh et al., 1,451,281, April 10, 1923.

Coupland, 1,653,698, December 27, 1927.

The board's general description of appellant's device is as follows: "* * * The counter is particularly designed for installations on airplanes where it is sometimes desirable to mount the gun at a considerable distance from the operator. The counting mechanism is electrically operated and the operating circuit is arranged in parallel with the firing mechanism of a gun so that it is put in condition for counting only when the gun is in operation. The counting indicator is in the form of a numeral-bearing disk which is operated step by step by an electromagnet. The numerals are so arranged as to read from a higher number representing the total number of rounds available to zero. The count is actually made by passing the individual rounds through a chute adjacent which is mounted a star wheel

which, by contact with the individual rounds, is caused to move one step for each round fired. A member of the star wheel serves to complete a circuit which operates the step-by-step mechanism of the counter."

The decision of the examiner and the brief on behalf of appellant discuss the several references in detail. The reference principally relied upon is the patent to Cravath, entitled "Motorman's Recorder," which is described in the decision of the board as showing: " * * * step-by-step operated counting mechanism similar to appellant's but designed for use with a street car or similar vehicle and for indicating distance through counting of the number of rotations of one of the vehicle wheels. The wheel, as it rotates intermittently, closes the circuit of the counting mechanism similarly to the star wheel of appellant's device. In Cravath, the counting mechanism is in parallel with the operating circuit of the car so that the counting mechanism can only be energized when the controller is in the 'on' position."

Appellant's principal contention with respect to the Cravath patent is that it is in a nonanalogous art, it being insisted that a street car distance register is not analogous to a machine gun ammunition counter. Extensive argument is indulged upon this point, and several authorities cited, including In re Burrows, 40 F.(2d) 1011, 17 C.C.P.A. (Patents) 1254; In re Bennett, 65 F.(2d) 144, 20 C.C.P.A. (Patents) 1087; In re Luks, 69 F.(2d) 552, 21 C.C.P.A. (Patents) 1005; In re Reichel, 84 F.(2d) 221, 23 C.C.P.A. (Patents) 1293, and the oft-cited case of C. & A. Potts & Co. v. Creager, 155 U.S. 597, 15 S.Ct. 194, 198, 39 L.Ed. 275.

Broadly, as of course, the operation of a street car and the firing of a machine gun are widely different arts, and a person probably would not look to one of them for instruction in the other. Upon this theory counsel for appellant base quite earnest arguments with respect to "proximate function," insisting that the proximate function of the Cravath patent differs from the proximate function of appellant's device. It is said, however, in the brief for appellant: " * * * Possibly, if Cravath's device did not require any modification whatsoever to cause it to operate as a machine gun ammunition counter, its proximate function might be held to be the same as that of appellant's device, *but, ob-*viously, *it must be modified by adding something to it* and, therefore, its *proximate* function cannot be the same until the modification is made." (Italics quoted.)

It does not seem to us that the broad difference between the arts of street car operation and machine gun firing are decisive of the issue here. The actual *art* is numbering or counting, with a display of the result at a desired location, and we regard such *art* as being the same in both the device of appellant and that of the Cravath patent. In re Weingartner, 58 F.(2d) 442, 19 C.C.P.A. (Patents) 1202.

The decision of the Supreme Court of the United States in C. & A. Potts & Co. v. Creager, supra, is often invoked in support of contentions respecting the patentability of devices taken from one art and applied in another, and frequently, it seems to us, the real meaning of the decision is not fully appreciated.

In the course of that decision, the court said: " * * * where the alleged novelty consists in transferring a device from one branch of industry to another, the answer [to the question, what is invention?] depends upon a variety of considerations. In such cases we are bound to inquire into the remoteness of relationship of the two industries, what alterations were necessary to adapt the device to its new use, and what the value of such adaptation has been to the new industry. If the new use be analogous to the former one, the court will undoubtedly be disposed to construe the patent more strictly, and to require clearer proof of the exercise of the inventive faculty in adapting it to the new use, particularly if the device be one of minor importance in its new field of usefulness. On the other hand, if the transfer be to a branch of industry but remotely allied to the other, and the effect of such transfer has been to supersede other methods of doing the same work, the court will look with a less critical eye upon the means employed in making the transfer."

And again it was said: "As a result of the authorities upon this subject, it may be said that, if the new use be so nearly analogous to the former one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill, it is only a case of double use; but if the relations between them be remote, and especially if the use of the old

device produce a new result, it *may* at least involve an exercise of the inventive faculty. Much, however, must still depend upon the nature of the changes required to adapt the device to its new use." (Italics quoted.)

Obviously, the court held that invention must somewhere be present, and we have thought the fair interpretation of the decision, so far as it may require interpretation, to be that invention must be found in the conception of new use and the modifications necessary to render the device applicable in the new field.

So, we think that in the instant case the patentability of appellant's device must be tested by the modifications requisite to adapt the Cravath device to use in the ammunition counting field in the manner proposed.

▮ The claims are all structural claims, and so the modifications of structure must be measured by the structure present in the prior art cited. As has been recited, the examiner analyzed the prior art in great detail and it would be useless to quote or paraphrase his decision here. The following somewhat general statement from the decision of the board appears to us fairly to meet the really essential issues presented: "Appellant is not the first to utilize counting mechanism to indicate the number of rounds fired by a machine gun, as shown by Coupland and the German patent to Cuppers. Coupland's counting mechanism is arranged to indicate the number of rounds remaining in the loaded belt and the counting mechanism of the Cuppers Patent is arranged to be operated by a star wheel, as is appellant's. If it is desirable to have the counting mechanism at a distance from the machine, it seems to us that one familiar with the teachings of the counting art would have no difficulty in arranging the mechanism in any desired location in view of such teachings as that of Cravath. The relationship between the counting and firing mechanism is not intimate and in our opinion the Cravath relationship between the controller and counter mechanism is an equivalent in so far as this art is concerned."

Appellant has failed to convince us that the tribunals of the Patent Office were in error.

Accordingly, the decision of the Board of Appeals is affirmed.

Affirmed.