33 C.C.P.A. (Patents)

## In re KORUM et al.

### Patent Appeals No. 5125.

Court of Customs and Patent Appeals.

March 6, 1946.

Brown, Jackson, Boettcher & Dienner, of Chicago, Ill. (Arthur H. Boettcher, of Chicago, Ill., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims (Nos. 22 to 25, inclusive) in appellants' application for a patent for an alleged invention relating to improvements in feed mill hammers.

Claim 25 is illustrative of the appealed claims. It reads: "25. A feed mill hammer comprising a flat bar of hardened steel adapted to rotate in a mill with its flat sides disposed in planes of rotation, one of said sides being recessed to provide a longitudinally extending rib, thin patches of facing material of the tungsten-carbide group appreciably harder than the steel of the hammer, fused along the leading edges of said flat side, said rib, and the end of the hammer, respectively, so that the edge of said facing material forms a wear resisting cutting edge of the hammer which becomes increasingly sharp as the unprotected softer material of the bar wears away from the facing material."

The references are: Rosenfeld, 1,889,-183, Nov. 29, 1932; Brodersen, 1,927,818, Sept. 26, 1933; Jensen, 1,954,175, Apr. 10, 1934; Russell et al., 1,960,879, May 29, 1934; Tankersley, 2,237,510, Apr. 8, 1941.

It is stated in appellants' application that their hammer is substantially the same as that disclosed in a co-pending application (now patent No. 2,291,815, issued August 4, 1942 to Henry E. Korum one of the joint applicants in this appeal), "and differs therefrom in that a thin coating of hard facing material is applied to certain surfaces of the hammer to provide a wear-resisting, self-sharpening hammer which is readily produced with initially sharp cutting edges."

The body of appellants' hammer is a flat bar of steel, adapted to rotate in a feed mill with its flat sides "disposed in planes of rotation," as stated in the appealed claims. One of the sides of the bar is recessed to provide a longitudinally extending rib, as stated in claims 24 and 25.

The improvement claimed in appellants' application consists in fusing thin patches of facing material of the tungsten-carbide group, which is appreciably harder than the steel of the body of the hammer, on certain portions of the hammer, for example, on "one of said flat sides along the leading edge thereof," as stated in claim 22, on "the outer end of the bar along the leading edge thereof," as stated in claim 23, "along the leading edge of said rib," as stated in claim 24, or "along the leading edges of said flat side, said rib, and the end of the hammer, respectively," as stated in quoted claim 25.

It is recited in each of the appealed claims that "the edge of said facing material forms a wear resisting cutting edge of the hammer, which becomes increasingly sharp as the unprotected softer material of the bar wears away from the facing material."

Appellants state in their application that excessive wear of feed mill hammers "is experienced in mills used for cutting fodder that has been stored in the open and has become filled with sand by the wind. As these hammers wear, the sharp cutting edges become dull, resulting in a considerable loss of efficiency. To minimize hammer wear under these extreme conditions, it has been suggested that the leading or striking faces of the hammers be hard-surfaced with a material sufficiently hard to withstand the abrasive action of the sand, but such a method has not been entirely satisfactory or successful owing to the fact that the application of hard facing material on the striking edges of the hammer tends to produce very dull cutting edges which require grinding that is expensive, both from the standpoint of wearing out grinding wheels, and removing high priced facing material in order to produce initial sharp cutting edges on the hammer."

To overcome those objectionable features, appellants have provided a thin coating of hard-surfacing material, such as tungsten carbide, for those portions of the hammer recited in the claims.

The patent to Rosenfeld relates to a combined grain and roughage mill for grinding roughage, such as straw, stalks, hay, etc., and discloses a hammer having a longitudinally extending rib on the side face thereof and one which is similar in shape to appellants' hammer.

The patent to Brodersen relates to earth working tools, and particularly to ripper or digging teeth. The patentee states in his application that "Broadly, the object of this invention is to produce a digging tooth of materials having different physical properties so distributed relative to the working angles and faces of the tooth and its normal position during use, as to maintain substantially the initial relation after long periods of use, and the consequent abrading away of the materials at the soil contact surfaces."

The patentee further states that certain portions of the working end of the tool are provided with wear-resistant material, such as tungsten carbide; that *"The wearing away of the softer material of which the body is formed will normally leave projecting points of the harder materials"*; and that as "the wear resistant material forms the outer edges of the tool, the tool will maintain its form and any tendency to wedge formation, either laterally or vertically is either completely resisted, or speedily corrected by the *wearing away of the softer body material."* (Italics not quoted.)

Claim 6 of the Brodersen patent reads: "6. A digger tooth as described in claim 4 in which the material of greater wear resistance extends into said forward face, and in which adjacent portions of said forward face are of lesser wear resistance than said first named material, whereby the wear resistant portions of said face maintain a projecting cutting edge as the tool wears in service."

The patent to Jensen relates to a rotary hammer for use in feed mills. The disclosure in this patent has little bearing on the issues in this case and, therefore, need not be described here.

The patent to Russell et al. relates to scarifier teeth. The patentees state that the use of tungsten carbide as a cutting edge produces a tooth which resists abrading action and rough usage for a long period of time; that the backing of their scarifier tooth is composed of metal, such as chrome vanadium steel; that the backing member is formed with a cut-out portion or groove at the lower end and along one edge; that tungsten carbide granules "are mechanically mixed with iron or an iron alloy, nickel, cobalt, or other metals or alloys of the iron group" and the mixture is secured in the cut-out portion or groove by means of welding; and that

"The particles of tungsten carbide are exposed as cutting elements when a portion of the bonding medium has worn away."

The patent to Tankersley, the principle reference relied upon by the tribunals of the Patent Office in rejecting the appealed claims, relates to hammers for feed mills, and discloses a flat bar, each of the four corners of which is provided with a V-shape groove which forms, as stated by the patentee, two teeth. It is stated in the patent that "To increase the effective life of the hammers they, or at least their cutting teeth, are desirably hardened; *but I find that the effective life may be even further increased if one of the side faces of each tooth is left soft. As the cutting edge of a tooth so constituted wears away, the relatively soft side face also wears away, thus keeping the tooth thin and sharp."* (Italics not quoted.)

It is further stated in the patent that each of the teeth has four faces, one, "defined by the end face of the hammer," one "defined by the side of the hammer," one, "defined by a face of the hammer," and one, "defined by a side wall of the groove * * *," and that "In the preferred form of" the patentee's "invention at least one of the latter two faces, desirably the face 19 [one of the inner faces of the groove], *is made relatively soft so that as it wears away the tooth * * * will become thinner."* (Italics ours.) The patentee also states that he case-carburizes the outer surfaces of the hammer and then cuts the grooves by which the teeth are formed, exposing the uncarburized core of the hammer; that if the grooves are provided before the hammer is carburized, the inner side of the tooth faces which are to remain soft are protected against carburization by "copper-plating"; and that "because of the relative softness of one side of each tooth, the sharpness of the teeth is preserved in spite of wear."

The Primary Examiner rejected claims 22, 23, and 24 on the disclosure in the patent to Tankersley in view of the disclosures in the patents to Russell et al. or Brodersen, the examiner stating that those claims were fully met by the patent to Tankersley with the exception of a wear-resistant facing material of the tungsten-carbide group; that the patents to Russell et al. and Brodersen disclosed fusing facings or patches of such wear-resistant material to softer backing surfaces; and that the Russell et al. and Brodersen patents also

explained that upon wear the harder wear-resistant material would "project beyond the softer adjacent material." It was the examiner's view that "The basic ideas in hammer construction and use of (1) providing hard metal facings on opposite sides of a central softer core, (2) of orienting the edges of the facings in the direction of motion, (3) of keeping sharp edges by relative different wear of facing and core; are all thus shown to be old in Tankersley."

Claims 24 and 25 were rejected by the examiner on the disclosure in the patent to Rosenfeld in view of the disclosures in the patents to Tankersley and Russell et al., the examiner stating that the patent to Rosenfeld discloses a longitudinally extending rib on the side face of the hammer, and that as the patent to Tankersley discloses the utility of a hardened surface or face on a hammer, it would be but a matter of choice whether to apply a hard surface to the body of the hammer or to some other portion, such as the longitudinal rib. The examiner was also of the opinion that as the patent to Rosenfeld discloses a hammer having unhardened surfaces but otherwise similar to the hammers called for by the appealed claims, it would be merely carrying forward the general teaching of the patentee Tankersley to provide "the leading edges of the flat side, the rib, and the end of the hammer" with hardened surfaces, as called for by claim 25.

It appears from an affidavit of record by one of the applicants, Leonard B. Neighbour, that after the final rejection of the claims here on appeal he had a test made in order to compare the actions and results of three types of hammers, to wit, the hammer defined by quoted claim 25, the one disclosed in the patent to Korum (hereinbefore referred to), and the Tankersley hammer, and that in the Korum and Tankersley hammers the edges became "rounded off to the elimination of any cutting ability, whereas, in the case of" the hammer defined by claim 25 "the cutting edge is still decidedly present." It is stated by the affiant that appellants' hammer is of great benefit to the farmer and is of established commercial value.

Upon the filing of the affidavit, the case was remanded to the Primary Examiner, who considered the affidavit at some length and held that it was not considered sufficient to warrant a holding that the appealed claims were patentable over the references of record. The examiner also called attention to the fact that two additional claims (Nos. 26 and 27) were proposed by appellants, and stated that the amendment requesting the addition of those claims had not been entered and was not recommended for entry as the amendment was not considered sufficient to place the case in condition for issue, and that no showing had been made as to why those claims were not presented earlier.

In its decision, the Board of Appeals stated that the patent to Tankersley disclosed the idea of hardening the surfaces of a hammer and "leaving adjacent surfaces of less hard metal exposed at a cutting edge so that the wearing away of the less hard surface will keep the cutting edge of the hammer thin and sharp," and that the patents to Russell et al. and Brodersen disclosed similar use of wear-resisting material, such as tungsten carbide. In conclusion, the board stated that in view of the disclosures in the patents to Tankersley, Russell et al., and Brodersen "it would not involve invention to harden the corresponding faces of the Rosenfeld hammer by applying tungsten-carbide thereto," and, accordingly, affirmed the examiner's rejection of the appealed claims. The board further stated that appellants had requested that it consider two additional claims (Nos. 26 and 27) which had been refused entry by the Primary Examiner, but that those claims were not properly before it and, therefore, would not be considered.

It is contended here by counsel for appellants that the working face of the Tankersley hammer is "simply extra-hardened"; that a cutting knife edge is not present; that the cutting edge of the working face is worn away first "and there is, from then on, simply an extra-hardened *impact* surface, with no better *shearing* action than an ordinary hammer" (italics quoted); and that their statement in that regard is confirmed by the test referred to in the affidavit of record.

Counsel for appellants state in their brief that the statement in the board's decision that " 'The idea of hardening surfaces of hammer-mill hammers and leaving adjacent surfaces of less hard metal exposed at a cutting edge so that the wearing away of the less hard surface will keep the cutting edge of the hammer thin and sharp is disclosed in Tankersley' * * * is in error," and that "If that holding is

in error, and we respectfully submit that it is, the entire structure of the rejection falls as a house of cards."

We think it is apparent from the record that appellants' hammer, particularly the one called for by quoted claim 25, is an improvement over the hammer disclosed by Tankersley. However, the patent to Tankersley teaches that the effective life of a hammer may be increased, if, as stated by the patentee, one of the side faces of each tooth is hardened and the other left comparatively soft.

It is true that the patentee Tankersley states in at least two instances that as the hardened cutting edge of the tooth wears away, the relatively soft side face of the tooth also wears away. He also states, however, that if the inner faces of the teeth are made relatively soft, those portions will wear away and the harder portions "will become thinner."

The patent to Brodersen clearly discloses the idea of providing the working end of digging teeth with wear-resistant material, such as tungsten carbide. The patentee states that "The wearing away of the softer material of which the body is formed will normally leave projecting points of the harder materials," and it is stated in quoted claim 6 of the Brodersen patent that as the softer material in the tooth wears away the harder wear-resistant portions maintain a projecting cutting edge as the tool wears in service.

In view of the fact, therefore, that the patents to Tankersley and Brodersen teach that the working edge of a tool, such as a mill hammer or digging tooth, may be provided with wear-resistant material and the adjacent portions with softer material, and that the wearing away of the softer material will, as stated in the Brodersen patent, "leave projecting points of the harder materials" and "a projecting cutting edge as the tool wears in service," we are unable to hold that the appealed claims define patentable subject matter.

It is suggested in the brief of counsel for appellants that the court consider the patentability of claims 26 and 27, which were refused entry and consideration by the Primary Examiner and the Board of Appeals, and direct that those claims be entered and allowed.

We have repeatedly held that claims not before the Board of Appeals cannot be considered by this court. See In re Slate, 108 F.2d 268, 27 C.C.P.A., Patents, 810; Application of Heritage, 153 F.2d 111, 33 C.C.P.A.,Patents, ——.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.