49 CCPA
**Application of Marion L. SMITLEY.**

**Patent Appeal No. 6720.**

United States Court of Customs
and Patent Appeals.
Dec. 18, 1961.
Rehearing Denied March 9, 1962.

Donald P. Bush, Detroit, Mich., George
A. Degnan, Washington, D. C. (Whitte-
more, Hulbert & Belknap, Detroit, Mich.,
of counsel), for appellant.

Clarence W. Moore, Washington, D. C.
(George C. Roeming, Washington, D. C.,
of counsel), for Comr. of Patents.

Before WORLEY, Chief Judge, RICH
and MARTIN, Judges, and Judge WIL-
LIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal is from the decision of the
Patent Office Board of Appeals affirming
the examiner's rejection of claims 1, 3,
6, 8 and 12 in application Ser. No. 618,-
757, filed October 29, 1956, for "Gover-
nor."

Appellant also appeals from the board's
refusal to consider claim 13, proposed by
appellant April 29, 1960, in a "Request
for Interference" with Wetterhahn pat-
ent 2,921,641, issued January 19, 1960,
which was after the hearing before the
board and before its decision. No claim
has been allowed.

The Smitley invention is a vacuum-
actuated, "combined engine and road

---

* United States Senior District Judge for
the Eastern District of Pennsylvania,
designated to participate in place of
Judge O'CONNELL, pursuant to pro-
visions of Section 294(d), Title 28 Unit-
ed States Code.

speed governor" for a vehicle driven by an internal combustion engine to which fuel is supplied through a carburetor. The purpose of the governor is to restrict the amount of fuel-air mixture supplied to the engine when approaching or reaching either excessive engine speed or excessive vehicle speed, or both. Appellant's invention embodies a carburetor of conventional construction comprising an upper air intake portion having a venturi and a lower body portion containing a throttle valve. The operator of the vehicle may regulate the quantity of fuel-air mixture supplied to the engine by controlling the position of the throttle valve through an accelerator pedal in the usual way. Such control of the throttle valve may be overriden, however, by appellant's automatic governor apparatus, which we will now briefly describe.

A vacuum-actuated governor diaphragm assembly, or "vacuum motor," is attached to the carburetor body portion and operatively connected to the throttle valve so that movement of the governor diaphragm under vacuum will close the throttle against the action of a spring which tends to open it. The vacuum side of the diaphragm chamber communicates through conduits with the venturi section, with the manifold below the throttle valve, and also with a controlled source of air under atmospheric pressure. As long as these passages are connected to atmosphere no vacuum can be produced to operate the governor. Such connection is through an air bleed conduit in which two speed-responsive, centrifugally-actuated, valves are placed *in series*. One valve is rotated in accordance with engine speed and the other in accordance with vehicle speed. When *either* speed exceeds a predetermined valve, it shuts off the supply of bleed air, the vacuum produced in the carburetor venturi or intake manifold, or both, acts on the governor diaphragm, moving it to close the throttle and slow down the engine.

It will be understood, as is well known, that an internal combustion engine when running produces a partial vacuum in the carburetor venturi section and also in the intake manifold and this is the source of vacuum utilized to operate the governor. Appellant places the inlet end of his bleed air conduit in the top of the carburetor where it will receive clean air through the carburetor air filter. His bleed air control valves are of known construction.

Claims 1 and 6 are illustrative and read:

"1. A constant speed governor for a vehicle driven by an internal combustion engine having a valve for controlling the flow of fuel to said engine, comprising a vacuum motor connected to said valve, air bleed means for rendering said vacuum motor inoperative, and a pair of adjustable centrifugal valve means connected in series and adapted for rotation in accordance with engine and vehicle road speed to variably restrict said air bleed and to actuate said vacuum motor and close said fuel control valve, said series connection resulting in governing action normally responsive to one or the other of said speeds and not to both of said speeds.

"6. The combination of a motor vehicle carburetor having an air intake passage with a venturi restriction and a throttle valve below said venturi, resilient means for normally holding said throttle valve open, a vacuum motor connected to said throttle valve in a manner to adapt said motor when actuated to oppose said resilient means and to close said throttle valve, first conduits connecting said vacuum motor with said venturi and said intake passage below said throttle valve, a second conduit between said first conduits and said intake passage above said venturi, said second conduit being adapted to bleed air to said vacuum motor, and a pair of centrifugal valves connected in series in said second conduit, one of said valves being connected for rotation in accordance with engine speed and the other of said valves being connected for rota-

tion in accordance with vehicle road speed, said valves being adapted to restrict the bleed of air to said vacuum motor when governed engine or vehicle road speed is approached and to prevent the bleed of air when either of said governed speeds is reached, the restriction of said bleed air causing said vacuum motor to progressively close said throttle valve."

The references relied on are:

| Sticelber | 1,843,960 | Feb. 9, 1932 |
|-----------|-----------|--------------|
| Olson | 2,367,606 | Jan. 16, 1945 |
| Parker | 2,657,918 | Nov. 3, 1953 |
| Reynoldson | 2,708,979 | May 24, 1955 |
| Holley, Jr. | 2,748,881 | June 5, 1956 |

*Reynoldson* shows speed control apparatus including elements similar in actuation and operation to corresponding elements of applicant's, the main distinction being that the Reynoldson speed responsive valves are arranged in parallel rather than in series.

The Reynoldson specification states:

"It is another object of the invention to provide in an automatic speed control system for a self-propelled vehicle having an internal combustion engine, independent controls for automatically limiting the *speed of the engine* and the *speed of the vehicle* to prevent overspeeding of either the engine or the vehicle. [Emphasis ours.]

\* \* \* \* \* \*

\* \* \* With this [parallel valve] arrangement the auxiliary valve 100 will automatically take over control of the fuel input of the engine 105 upon closing of the bleeder ports in *either* of the controllers 106 and 110, the former being responsive to the speed of the vehicle and the latter being responsive to the speed of the engine, the auxiliary valve being so constructed that the diaphragm 31 is fully responsive to closure of *either* of the bleeder ports." [Emphasis ours.]

We shall discuss this reference further in connection with appellant's contention that the disclosed apparatus will not function as above stated.

*Holley, Jr.*, discloses the use of two series-connected valves, one responsive to road speed and the other to engine speed, connecting a manifold vacuum source with a vacuum motor which provides power assisted automobile steering. The Holley, Jr., power assist device may be inactivated by actuation of either of the two series-connected valves.

*Parker* discloses an engine speed regulator system wherein the amount of fuel supplied to the engine is controlled by the back-and-forth movement of a spring-biased power servo consisting of a piston slidable in a cylinder. Fluid under pressure supplied to the servo cylinder by a hydraulic pump tends to raise the servo piston against the action of the servo spring and increase the flow of fuel to the engine. Located in the fluid line between the servo and the pump are *two speed-responsive devices* which act *in series* to supply fluid to the motor, i. e., fluid will be allowed to flow to the power servo only when neither of the speed-responsive devices is actuated.

*Olson* discloses a vacuum-actuated governor of the same general type as appellant's. The Olson vacuum motor is connected to a throttle valve and to a combination of venturi and manifold vacuum sources in a manner very similar to appellant's. Olson, however, discloses only a single speed-responsive valve in the bleed line which connects his vacuum motor with atmospheric air, which valve apparently responds to engine speed. It is the same kind of centrifugally actuated valve used by appellant.

*Sticelber* was not applied by the examiner in his final rejection but was of record and noted by the board as teaching

"\* \* \* the idea of controlling the throttle valve of the driving engine of a vehicle separately by two governors, one responsive to engine speed and the other responsive to vehicle speed, to prevent overspeeding."

The Sticelber governors are electrical switching means arranged in parallel so that actuation of either will close an electrical circuit to energize a solenoid-controlled throttle. When energized, the solenoid cuts off the fuel to the engine.

The board, summarizing the examiner's rejection, stated:

"All of the claims stand rejected as unpatentable over Olson, Parker, Reynoldson and Holley, Jr. which have been applied in various ways * * *. While we find no reversible error in the rejection of the claims, we shall confine our remarks to the Olson, Reynoldson and Holley Jr. patents which we regard as the best references, the Parker patent being considered cumulative in character."

Appellant objected to the examiner's rejection because, inter alia, the device disclosed by Reynoldson was alleged to be inoperative, and because the Holley, Jr., patent, for power steering apparatus, was alleged to be from a non-analogous art.

While much speculative argument has been made, by both the Patent Office and appellant, concerning the operativeness of the particular Reynoldson device relied on (disclosed in Fig. 6, possibly modified by the inclusion of the pressure equalizer of Fig. 7), the operativeness or inoperativeness of this device is not really material to the issue, considering the limited manner in which the board relied on this reference. It stated:

"* * * it appears to us that there is a clear teaching in the Reynoldson patent of the *desirability* of separately operative controls." [Emphasis ours.]

■ Regardless of operativeness, the truth of the above statement is beyond dispute. Reynoldson clearly discloses a two-valve bleed line governor system wherein actuation of either governor air bleed valve is *intended* to effect control of fuel flow to an engine, in accordance with either engine or vehicle speed. The Reynoldson valves are arranged in *parallel*. Parker and Holley, Jr., however, clearly

disclose the use of *series*-valve governor systems designed to effect independent control over a governed engine or vacuum motor by *either* of the valves in the system. These references further disclose making series-valve governors responsive to the same two speeds to which Reynoldson's governors are intended to respond. If, for any reason, including inoperativeness, the particular Reynoldson governor valve system were found to be undesirable, it must be presumed that one skilled in the art would look to the prior art, at least in the vacuum motor automotive accessory field as exemplified by Holley, Jr., for another two-valve system which might effect the same desired control. In view of this art, we agree with the Patent Office decision that the claimed invention is obvious. We see nothing patentably significant in the positioning of such governor valves in an atmospheric air bleed line, rather than in a vacuum line as in Holley, Jr. Both Reynoldson and Olson so position speed-responsive governor valves.

In claim 6, particular positions for the "first conduits" and "second conduit" are required. Olson discloses substantially this same conduit system which one skilled in the art could, in an obvious way, incorporate into a series-valve governor system if he so desired. In fact, it appears to us that appellant's governor is substantially Olson's with one additional centrifugal valve, like Olson's, responsive to vehicle speed, inserted in the air bleed line.

Claim 12 further requires: (1) centrifugal valves which are "spring loaded to remain open," shown by Olson to be old, and (2) a source of clean air for which Holley, Jr., expressly provided. Such specific elements in particular governor systems would be obvious, if not conventional, in view of the state of this art as disclosed by the references.

■ As to appellant's contention that Holley, Jr., is from a non-analogous art, we agree with the board's view that this is not the case. As the board pointed out, the Holley, Jr., device relates, as does appellant's, to the control of vacuum-operated servomotors applied to motor

vehicles. Holley, Jr., moreover, is controlling his vacuum motor by his series valves in accordance with the road speed and engine speed of the vehicle. As some indication, though not conclusive by any means, that, as a practical matter, the art is not too remote, is the fact pointed out by the board that the Holley, Jr., patent is assigned to the assignee of appellant's application, Holley Carburetor Company. We feel that appellant's invention and that of Holley, Jr., are really in the same art of vacuum-actuated motor vehicle accessory mechanisms. In re Kylstra, 87 F.2d 487, 24 C.C.P.A. 938.

For all of the foregoing reasons we find no error in the rejection of claims 1, 3, 6, 8 and 12.

### Proposed Claim 13 and Related Reasons of Appeal

After the 30 days allowed by Rule 197 (b), 35 U.S.C.A.Appendix to ask for reconsideration of the board's decision, appellant filed a "Supplement to Request for Reconsideration" accompanied by a "Request for Interference" containing an amendment adding claim 13 allegedly copied (with omissions) from Wetterhahn patent No. 2,921,641.

The board refused to consider either of these papers, the supplementary request because filed too late and the request for interference because it, as the board said, "is not properly before us." The board also said, "[it] will be considered by the primary examiner in due course," as it was on June 13, 1960, just before appeal was taken to this court on June 20.

The primary examiner's action on claim 13 was: (a) the claim is deemed unpatentable over the references relied on in rejecting the other claims which were made the subject of the appeal; (b) entry of the amendment and the request for interference are both denied.

By reasons of appeal appellant alleges error by the board in (a) failing to act on the supplementary request, (b) failing to act on the request for interference, and (c) failing to pass on the patentability of claim 13.

■ Appellant asks us "to consider claim 13 and to indicate that this claim is allowable along with the claims regularly on appeal." We cannot do this. The claim is not in the application on appeal, its entry having been refused. The claim has not been considered by the Patent Office and therefore we cannot review it on appeal. 35 U.S.C. § 141. In re Korum et al., 154 F.2d 185, 33 C.C.P.A. 923; In re Wiedman, 243 F.2d 798, 44 C.C.P.A. 901.

■ As to the board's refusal to consider a paper filed beyond the time allowed by the rules, that is within its discretion, if not its right, and no abuse of discretion has been shown. In re Sweet, 136 F.2d 722, 30 C.C.P.A. 1124, 1127. In that case the board was held not to have abused its discretion in refusing to permit entry of a new claim.

The decision of the Board of Appeals is affirmed.

Affirmed.

SMITH, J., did not sit or participate in decision.