50 CCPA
### Application of John G. MILLER.
### Patent Appeal No. 6878.

United States Court of Customs and Patent Appeals.

Jan. 16, 1963.

**956**

Andrew B. Beveridge, Mead, Browne, Schuyler & Beveridge, Washington, D. C., Alfred E. Wilson, Wilson, Settle & Craig, Hiram P. Settle, Jr., Dearborn, Mich., for appellant.

Clarence W. Moore, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr., Judges.

MARTIN, Judge.

This is an appeal from a decision of the Patent Office Board of Appeals affirming the rejection by the Primary Examiner of claim 16 of appellant's application, serial No. 643,282, filed March 1, 1957, entitled FORMING PLASTIC CONTAINERS.

The appealed claim reads:

"16. In a method of making a blown organic plastic article, the steps of extruding through an orifice a hollow plastic tube having a substantially constant wall thickness, intermittently applying a chilling medium to portions only of the exterior surface of said hollow tube immediately adjacent the orifice as the tube is extruded, said chilling medium being applied to substantially less than the entire tube length and extracting sufficient heat from said portions to substantially reduce the expansibility of said portions without extracting so much heat therefrom as to prohibit subsequent expansion of even the chilled portions, simultaneously pinching shut one end of the tube and enclosing the tube in a blow mold, thereby forming an expansible blank having non-uniformly expansible portions, injecting air under pressure into the mold-enclosed blank, and non-uniformly expanding the blank portions interiorly of the mold to the final configuration of said article."

Claim 17, the remaining claim, has been allowed.

The references relied on by the examiner and the board are:

| | | |
|---|---|---|
| Wadman | 2,336,822 | Dec. 14, 1943 |
| Bailey et al. | 2,529,897 | Nov. 14, 1950 |
| Sherman | 2,710,987 | June 21, 1955 |

Appellant's application relates to the formation of plastic articles such as bottles, jars and the like. It discloses a method wherein organic plastic material is extruded in tubular form from an extruder nozzle through an orifice opening into a neck mold. The neck mold is then moved upwardly at a speed slightly faster than the rate at which the plastic material is being forced from the orifice opening. This results in the formation of a tubular blank. Appellant contemplates chilling selected areas along surfaces of the tubular blank as it is being extruded in order to render those areas less susceptible to stretching when the tubular blank is subjected to the final blowing operation. This chilling, it is asserted, controls the wall thickness of the ultimately blown article in predetermined portions of its wall structure.

With completion of the extrusion of a sufficient length of tubular blank, vertical movement of the neck mold is arrested and the halves of a blow mold are closed around the tubular extrusion, pinching the tubular extrusion at one end. Immediately thereafter air is admitted at the other end of the tubular extrusion to expand the tube to the shape determined by the blow mold.

Appellant in his brief points out that in the prior art processes, the upper and lower shoulder portion of plastic bottles or the like, and particularly the corner

extremities thereof, are thin and weak, because the plastic material reaches those portions of the mold last during blowing operations. It is stated that the present invention has as its prime purpose the formation of a tubular preform or blank which is *non-uniformly expansible* upon blowing, so that the expansion of various portions of the tube can be correlated to the occurrence of those portions of the tube in the final article, thus yielding an improved final structure.

The patent to Sherman shows generally the formation of plastic bottles by the extrusion, blow mold process broadly the same as appellants. However, no control of wall thickness is mentioned.

The Wadman patent discloses chilling selected portions of the external surface of a heated parison [1] by applying a chilling medium to selected portions only of the exterior surface of a heated glass parison in such a manner so as to reduce the expansibility of said portions. The parison is then placed within a blow mold where it is expanded upon blowing to meet the confines of the mold.

The Bailey et al. patent relates to extruding and blow-forming plastic tubes. The plastic tube is subjected to jets of cooling air immediately after extrusion. The amount of air is increased to cause additional chilling when a thin section occurs in the tube. The patentees state:

"* * * The additional chilling reduces expansion and thinning of the underlying portion of the tube and greater uniformity of thickness is obtained."

The examiner found nothing patentable in subjecting the heated extruded tube of Sherman to the chilling technique taught by Wadman prior to expansion in a blow mold, especially since Bailey et al. would seem to clearly suggest that organic plastic reacts to a chilling operation in much the same manner as glass.

The board in affirming the examiner, stated:

"We are of the opinion that one ordinarily skilled in the art would be informed by the Wadman patent to expect certain portions of a blown bottle to be thinner than others if blown from a blank having uniform viscosity, regardless of whether it be organic plastic material or glass, since the thickness depends on viscosity. Also, Wadman suggests the solution of the problem, i. e., cooling certain areas.

"While it may be true, as appellant argues, that some phases of the glass making art would not be suggestive of procedures to be followed when organic plastics are involved, we believe that the understanding of the control of a blown wall thickness by viscosity control in one art would constitute a complete teaching for the other art.

"In any event, if this were not the case, we believe that the teaching of Bailey et al. that the thickness of a blown organic plastic may be controlled by controlling the viscosity of the extruded plastic would be a clear teaching to one skilled in the art to use similar means in conjunction with Sherman if it were found that certain sections were too thin."

Appellant urges that the Wadman patent, since it relates to glass rather than plastic, is from a non-analogous art and is not properly combinable with Bailey et al. and Sherman. It is alleged that glass cannot be extruded as a practical manner and hence Wadman cannot teach any selective cooling of an extruded tube as the tube is formed. Appellant additionally contends that Wadman selectively cools a *predetermined* shape which is already a blowable bubble, but does *not* show selective chilling *during extrusion, nor* does he show *forming* a blowable bubble *after* extrusion and

1. The following definition from Webster's Third New International Dictionary (1961) is relevant here.

"parison. * * *. 1: a gob of glass that has been partially shaped or molded into an object. * * *"

selective cooling. As to Bailey et al. appellant urges that it hardly appears logical that Bailey et al. could suggest treatment of an extruded tube to obtain non-uniformity of expansion or differential expansion where Bailey et al. are merely making a cylindrical object and are not even utilizing a blow mold. Furthermore, he asserts, combining Bailey et al. with Sherman which teaches only uniform expansion, does not preclude appellant's invention from being unobvious.

Appellant does not question the fact that Sherman discloses a method of forming plastic bottles by first extruding a plastic substance and then using a blow mold to produce the finished article nor that Bailey et al. teaches a method of maintaining a uniform thickness of the wall of plastic tubing by means of circumferential cold air jets which are used to regulate the viscosity of the plastic tubing after it has been extruded.

The two principal features upon which appellant predicates patentability of his invention are the process of chilling the plastic tubing while it is being extruded and the chilling of those portions which will ultimately become the so-called shoulders and heels of the bottle.

We find not only both of these features in Wadman but also a statement describing the problem, encountered in the blow mold bottle producing art, which appellant is endeavoring to solve by his method. The problem to which we refer, of course, is the problem of producing a finished bottle which has approximately the same thickness of material in locations such as the shoulder and heel, or in the vertical corner portions of a rectangular bottle, as in the wall portions themselves.

As to the second feature, Wadman's specification reads in part:

"To carry out the present invention, a charge of molten glass, produced by an automatic feeder or otherwise, may be formed into a hollow parison of generally cylindrical shape in any preferred way and by the use of any preferred parison forming mechanism. After this stage in the formation of a non-circular glass article has been reached, such parison is acted upon according to the present invention to cool locally the longitudinally extending circumferentially spaced portions of the parison wall which will become the longitudinally extending or vertical corner portions of the wall of the finally formed article.

"This localized cooling may be effected by applying jets of air or other cooling medium locally to these portions of the parison wall at the outer surface thereof or by placing metal strips or other heat conducting members or means in contact or good heat abstracting relation with such portions of the parison wall. If desired or deemed necessary, heat may be applied to the intervening portions of the parison wall to assure that the glass thereof has the temperature and viscosity desired. Thereafter, the hollow parison is placed within the non-circular cavity of the final blow mold so that the locally cooled, more viscous, longitudinally extending portions of the wall of the parison are in the appropriate positions to be forced outwardly, on blowing, into the corner portions of the blow mold cavity. On such final blowing, these portions of the wall of the parison will resist distention by the blowing pressure more than the intervening less viscous portions. The wall of the finally blown non-circular article will be thicker at the vertical corner portions thereof than has been the case in a generally similar article as produced by the methods and machinery commonly used prior to this invention to produce such an article."

With reference to the first feature the Wadman specification states:

"* * * In the operation of this embodiment of the invention, the local cooling of the spaced vertical portions of the hollow parison wall may

be accomplished at the parison forming station and by use of the parison mold as the cooling medium. Instead of the spaced water cooled portions, such a parison mold may be constructed to have portions of higher conductivity next to the portions of the parison to be locally cooled than that of the mold portions next to the intervening portions of such parison."

We do not agree with appellant's position that the Wadman patent cannot be considered as a reference because it involves a nonanalogous art. There is no question but that producing bottles of plastic is different than forming bottles of glass and that the two procedures in most respects are not similar. However, appellant fails to take into consideration that the step he made critical and the one upon which he predicates patentability in his process is found in the Wadman patent. Therefore, we are faced with the question of whether it would be reasonable for one skilled in the blow molding plastic bottle producing art to seek a solution to the problem of maintaining uniform thickness of the substance by searching for an answer in the blow molding glass bottle producing art. We are of the opinion that this question must be answered in the affirmative.

We think our opinion finds support in In re Kylstra, 87 F.2d 487, 488, 24 CCPA 938, 940. In that case there was involved an application which dealt with a combination of a machine gun, an ammunition container for feeding shells to said gun and an associated counter. The reference principally relied upon was a patent to Cravath which was described in the decision of the board as showing a "step-by-step operated counting mechanism similar to appellant's but designed for use with a street car or similar vehicle and for indicating distance through counting of the number of rotations of one of the vehicle wheels." In that case appellant's principal contention with respect to the Cravath patent was that it was a nonanalogous art, it being insisted that a street car distance register is not analogous to a machine gun ammunition counter.

In affirming the rejection in the Kylstra case, this court held:

"It does not seem to us that the broad difference between the arts of street car operation and machine gun firing are decisive of the issue here. The actual *art* is numbering or counting, with a display of the result at a desired location, and we regard such *art* as being the same in both the device of appellant and that of the Cravath patent. In re Weingartner, 58 F.2d 442, 19 C.C.P.A. (Patents) 1202."

We have considered Plax Corporation v. Elmer E. Mills Corporation, D. C., 106 F.Supp. 399; on appeal 7 Cir., 204 F.2d 302, but do not find it controlling in the instant case.

In view of the foregoing, we affirm the decision of the board.

Affirmed.

SMITH, J., sat but did not participate in decision.